UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X
DADA MEDIA, INC.,                          :
        Plaintiff,                         :   Civil Action No.:
   -against-                              :
                                            :   **COMPLAINT**
MON CHERI BRIDALS, LLC,                    :
        Defendant.                         :   **JURY DEMANDED**
------------------------------------------- X

Plaintiff, Dada Media, Inc. ("DM"), by and thorough its undersigned counsel, alleges as and for its Complaint against Defendant Mon Cheri Bridals, LLC ("MCB") as follows:

## SUMMARY OF ACTION

1.  This is a civil action for trademark infringement and unfair competition arising under the Lanham Act, breach of contract, and related claims under the laws of the State of New York and at common law.

## PARTIES

2.  Plaintiff DADA MEDIA, INC. ("DM") is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 23823 Malibu Road, Ste. 50-439, Malibu, California, 90265.

3.  Upon information and belief, Defendant MON CHERI BRIDALS, LLC ("MCB") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1018 Whitehead Road, Trenton, New Jersey.

**JURISDICTION AND VENUE**

4. The Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b), as it involves substantial claim arising under the Lanham Act, 15 U.S.C. § 1051, et seq., as amended, combined with related claims arising under state law; and under 28 U.S.C. § 1367 under the principle of supplemental jurisdiction.

5. MCB is subject to the personal jurisdiction of this Court. Defendant consented to and waived any objection to the personal jurisdiction of this Court, pursuant to the license agreement that is the subject of this Action. Furthermore, on information and belief, MCB systematically and continuously transacts, and does business, in New York, and committed the tortious acts set forth herein, in the State and County of New York, within the meaning of New York's long-arm statute, Civil Law and Practice Rules §§ 301, 302.

6. Venue lies in this Court pursuant to 28 U.S.C. § 1391(c)(2) because (i) Defendant MCB is subject to personal jurisdiction in this District and it is, therefore, considered a resident in this District for purposes of venue; (ii) Defendant consented to and waived any objection to venue in this Court pursuant to the license agreement that is the subject of this Action; and (iii) pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to the claims occurred in this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**The David Tutera Marks**

7. Mr. Tutera, the Chief Executive Officer of Plaintiff DM, is an acclaimed professional wedding planner and bridal fashion designer, and the recipient of numerous awards and recognitions for his work.

8. Mr. Tutera has hosted several popular television shows, including *Party Planner*, *Get Married*, *My Fair Wedding*, *David Tutera: Unveiled*, and *David Tutera's CELEBrations* and has been featured in numerous publications including US Weekly, Bridal Guide (Quaterly Column, and other features), Food & Beverage Magazine, Bride & Groom, OK!, USA Today, Brides Magazine, the knot, WeddingWire, Facebook live events for theknot.com, California Weddings, Philly Weddings, Vogue, GQ, Vogue International, and People Magazine.

9. Mr. Tutera has received much acclaim among both industry professionals and from consumers, including being recognized by Life & Style Magazine as "Best Celebrity Wedding Planner." Mr. Tutera has designed events for countless celebrities and organizations, for example, Jennifer Lopez, Matthew McConaughey, Jewel, Star Jones, Elton John, Barbara Walters, the Rolling Stones, Nancy Reagan, Prince Charles, The White House, the Prevent Cancer Foundation, and the Alzheimer's Association, and the Make-A-Wish Foundation.

10. By virtue of Mr. Tutera's industry success and recognition, Mr. Tutera has launched and licensed a number of successful DAVID TUTERA-branded product lines, including, but not limited to, the signature bridal jewelry collection "Embellish by David Tutera", the "David Tutera Invitation Collection", the "David Tutera Shoe Collection", the "Permanent Floral Collection", the "Wedding and Floral Decor Collection", the "Old Hollywood Entertaining Line", DIY Jewelry, Paper Floral Decor, and as well as a Candle Line.

11. Mr. Tutera has been advertising and promoting products and services under the name and trademark DAVID TUTERA since at least as early as 1998. By virtue of Mr. Tutera's efforts, the DAVID TUTERA trademark has been in use in commerce continuously either by Mr. Tutera himself, DM or by authorized licensees.

**Plaintiff DM is the Owner of the DAVID TUTERA Marks**

12. In order to promote the David Tutera brand, Mr. Tutera founded his company, Plaintiff DM. Plaintiff DM is the owner of the DAVID TUTERA trademark, the U.S. Federal trademark registrations set forth below in **Schedule A**, as well as all established common law rights thereto (collectively hereinafter the "Marks"). True and correct copies of the certificates for the trademark registrations are attached as **Exhibit A,** and incorporated by reference herein. These registrations are valid, subsisting, and enforceable; and Registration No. 3,411,492 is incontestable pursuant to 15 U.S.C. § 1065.

13. Plaintiff DM, its predecessors in interest, and licensees have prominently used and promoted the Marks in various media and advertisement in the manners customary in the trade, as well as through extensive television coverage and high-profile event appearances. As a result, the Marks have become distinctive and serve to identify DM's goods and services, to distinguish them from the goods and services of others, and to identify the source or origin of these goods and services, in the mind of intended consumers.

14. Indeed, the Marks are strong and thus entitled to broad protection. The goodwill associated with the Marks is an invaluable asset of enormous worth to DM and its licensees, and is vital to the continued growth and success of DM's business and Mr. Tutera's reputation for quality.

**The Parties' License Agreement**

15. On August 1, 2011, DM and MCB entered into a License Agreement ("Original License Agreement") granting a license from DM to MCB to use the trademark DAVID TUTERA in connection with "Wedding gowns; women's and children's social occasion wear, specifically limited to non-white, bridesmaid, mother of the bride, and flower girl dresses;

wedding veils, wedding head pieces and wedding gloves" solely in certain distribution channels expressly defined in the Original License Agreement, and additional related articles solely if specifically approved by DM pursuant to the procedure for such approval set forth in the Original License Agreement.

16. On January 25, 2016, DM and MCB entered into a renewal and addendum to the Original License Agreement entitled "David Tutera Contract Renewal and Addendum" (the "2016 Renewal") extending the term of the license from January 1, 2017 through December 31, 2021, and limiting the original scope of the license to only "Wedding gowns."

17. Pursuant to the combined terms of the Original License Agreement and the 2016 Renewal (collectively hereinafter the "Agreement"), MCB undertook an obligation to pay DM royalties for net sales of licensed products under the Agreement and provide timely royalty reports thereof; as well as, <u>inter alia</u>, to provide timely business plans for the promotion of David Tutera branded products, comply with a specific approval process for those products and related labels, label products as specified in the agreements, make promotional expenditure and provide accounting reports thereof, and perform various other covenants designed to protect the integrity of the Marks and further promote their use in the market.

**MCB's Default and License Termination by DM**

18. Beginning in the first quarter of 2017, MCB failed to make royalty payments to DM in accordance with the Agreement.

19. On May 23, 2017, DM wrote to MCB to formally give notice to MCB it had defaulted on its obligations under the Agreement and to demand that MCB cure its default, or face termination of the Agreement.

20. MCB failed to cure.

21.	After a period of negotiations between DM and MCB, it became apparent to DM that MCB had no intention of curing its default, or abiding by the other material terms of the Agreement going forward. As a result, as of June 27, 2017, DM formally terminated the Agreement due to MCB's non-payment of royalty fees.

22.	To date, MCB has not made any royalty payments to DM in accordance with the Agreement for any of the quarters of 2017, except for a sum of $50,124.73 paid by MCB to DM on July 12, 2017.

23.	Post-termination, commencing on June 27, 2017, MCB had no further right to manufacture, advertise, distribute, sell, or otherwise deal in any goods associated with the Marks, including without limitation no right to use the Marks and/or sell or otherwise dispose of products bearing the Marks. Under the express terms of the Agreement, MCB forfeited any right to sell-off inventory bearing the Marks, as MCB's license had been terminated for non-payment of royalty fees.

24.	Despite having forfeited its right to the sell-off period, on information and belief, MCB continued its unauthorized use of the Marks by selling or promoting products in connection, and/or in manners that create association, with the Marks, the "David Tutera for Mon Cheri" line and/or Mr. Tutera's reputation.

25.	Furthermore, on information and belief, MCB began rebranding exact products and styles previously designated and labeled as "David Tutera for Mon Cheri" as "Martin Thornburg: A Mon Cheri Collection". In effect, on information and belief, MCB began selling the same exact styles of David Tutera-licensed products that had become distinctive through association with the Marks and Mr. Tutera's reputation in the mind of consumers, under a different brand name.

26. MCB's CEO even publically admitted to this. On July 27, 2017, he stated "David [Tutera] and I have enjoyed years of success together, but as in life, things change. We are going our separate ways but that will not affect the product you have in your store. Nothing changes other than the branding will stay Mon Cheri rather than DT for Mon Cheri."

27. Notably, on information and belief, the Facebook page and MCB's website still contain and/or embed information that is associated with the David Tutera name and the Marks.

28. Such conduct by MCB has caused actual confusion in the marketplace, prompting customers to contact DM regarding MCB's rebranding of licensed products, creating the false impression among consumers that Mr. Tutera is no longer making wedding dresses, or that someone else took over the line associated with his name and trademarks. A fact that has damaged DM immeasurably because, amongst other things, MCB failed to maintain the high quality standards DM requires of its products.

## COUNT I – BREACH OF CONTRACT

29. DM incorporates the allegations set forth in paragraphs 1 through 28 hereof as if fully set forth herein at length.

30. The Agreement is a valid and legally binding contract.

31. At all times relevant hereto, DM fully performed its obligations under the Agreement.

32. MCB failed to perform its obligations under the Agreement, and substantially and materially breached the Agreement, by acts and omissions that include, but are not limited to, inter alia: (1) failing to make royalty payments owed to DM for 2017; (2) failing to cure such non-payment; and (3) continuing use of the Marks and/or other acts creating association with the Marks or David Tutera.

33. DM has been harmed and suffered damages as a result of MCB's breaches of the Agreement in an amount to be determined a trial.

34. Moreover, the aforesaid acts have caused and will continue to cause great and irreparable injury to DM. Unless such acts are restrained by this Court, they will be continued and DM will continue to suffer irreparable injury. DM has no adequate remedy at law.

### COUNT II – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

35. DM incorporates the allegations set forth in paragraphs 1 through 34 hereof as if fully set forth herein at length.

36. On June 27, 2017, DM lawfully terminated the Agreement for non-payment of royalty fees. Upon termination thereof, under the Agreement MCB had no rights to use the Marks in any manner, including without limitation no right to a sell-off period for inventory.

37. On information and belief, MCB continued its unauthorized use of the Marks by selling or promoting products in connection, and/or in manners that create association, with the Marks. Despite MCB having no authority to use the Marks, it held itself out to the public as having such authority.

38. MCB's actions as aforesaid constitute use in interstate commerce, without license or consent, of the Marks in connection with the sale, offering for sale, distribution, or advertising of goods and services similar to the goods and/or services registered for the Marks, on or in connection with which such use has in fact caused and is likely to cause confusion, or to cause mistake, or to deceive.

39. MCB's actions as aforesaid constitute trademark infringement, unfair competition, misappropriation, passing off, unlawful, unfair, deceptive and fraudulent business practices, and the making of false or misleading statements in connection with the sale, offering

for sale, distribution, or advertising of goods and services in violation of the Lanham Act, and the laws of New York state and the several states.

40. MCB's actions were intentional, willful and in bad faith with a purpose of causing harm to DM and the Marks.

41. The aforesaid acts of MCB have caused and will continue to cause great and irreparable injury to DM, and unless such acts are restrained by this Court, they will be continued and DM and the public will continue to suffer great and irreparable injury. DM has no adequate remedy at law.

### COUNT III – FALSE DESIGNATION OF ORIGIN AND FALSE DESCRIPTIONS AND REPRESENTATIONS UNDER SECTION 43(a) OF THE LANHAM ACT

42. DM incorporates the allegations set forth in paragraphs 1 through 41 hereof as if fully set forth herein at length.

43. MCB's actions as aforesaid constitute the use in commerce, directly and/or contributorily, of false designations of origin and false and misleading descriptions and representations of fact which have caused and are likely to cause confusion, to cause mistake and deceive as to the affiliation, connection and association of MCB with DM and as to the origin, sponsorship or approval of MCB's goods and commercial activities; and misrepresent the nature, characteristics and/or quality of MCB's goods in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

44. MCB's actions were intentional, willful and in bad faith with a purpose of causing harm to DM and the Marks.

45. The aforesaid acts of MCB have caused and will continue to cause great and irreparable injury to DM, and unless such acts are restrained by this Court, they will be continued

and DM and the public will continue to suffer great and irreparable injury. DM has no adequate remedy at law.

### COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

46. The allegations of paragraphs 1-45 are restated and realleged as though fully set forth herein.

47. DM owns all right, title and interest in and to the Marks, including all common law rights thereof.

48. MCB's continued advertisement, distribution, offer to sell and sale of products using the Marks and/or products recognized and associated with the Marks constitute unauthorized use of the DM's common law trademark rights and is likely to cause customer confusion.

49. By reason of its aforesaid acts, MCB has engaged in trademark infringement in violation of the common law of the State of New York.

50. MCB's actions as aforesaid have damaged DM in an amount to be determined at trial, and caused and will continue to cause great and irreparable injury to DM. Unless such acts are restrained by this Court, they will be continued and DM and the public will continue to suffer great and irreparable injury. DM has no adequate remedy at law.

### COUNT V – COMMON LAW UNFAIR COMPETITION

51. DM incorporates the allegations set forth in paragraphs 1 through 50 hereof as if fully set forth herein at length.

52. MCB has engaged in deceptive practices that render competition unfair and violate the standard of commercial morality.

53. MCB engaged in practices aimed at causing consumer confusion and attempting to trade on the fame and success of the Marks. Such conduct has unfairly misled the public and diminished the Marks and brand in the commercial market.

54. By reason of its aforesaid acts, MCB has engaged in unfair competition in violation of the common law of the State of New York.

55. MCB's actions as aforesaid have damaged DM in an amount to be determined at trial, and caused and will continue to cause great and irreparable injury to DM. Unless such acts are restrained by this Court, they will be continued and DM and the public will continue to suffer great and irreparable injury. DM has no adequate remedy at law.

## COUNT VI – DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK GENERAL BUSINESS LAW

56. The allegations of paragraphs 1-55 are restated and realleged as though fully set forth herein.

57. MCB engaged in practices aimed at causing consumer confusion and attempting to trade on the fame and success of the Marks. Such conduct has unfairly misled the public and diminished the Marks and brand in the commercial market.

58. By reason of its aforesaid acts, MCB has engaged in deceptive trade practices in the conduct of its business in violation of N.Y. Gen. Bus. Law §§ 349 and 350. MCB has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

59. The aforesaid acts of MCB have damaged DM in an amount to be determined at trial, and caused and will continue to cause great and irreparable injury to DM. Unless such acts

are restrained by this Court, they will be continued and DM and the public will continue to suffer great and irreparable injury. DM has no adequate remedy at law.

## COUNT VII – UNJUST ENRICHMENT

60.     The allegations of paragraphs 1-59 are restated and realleged as though fully set forth herein.

61.     MCB has been and continues to be unjustly enriched at DM's expense by MCB's unauthorized and infringing acts complained of herein. Equity and good conscience require restitution.

## PRAYER FOR RELIEF

WHEREFORE, DM demands that this Court enter judgment against MCB and in favor of DM as follows:

A.  Awarding DM damages resulting from MCB's breach of the Agreement in an amount as determined at trial;

B.  Ordering an accounting of the royalties owed DM under the Agreement;

C.  Ordering MCB to provide DM with access to documents and records pertaining to sales and royalties under the Agreement;

D.  Ordering MCB to permit DM to conduct an inspection and audit of such documents and records pertaining to sales and royalties under the Agreement;

E.  Awarding DM recovery of MCB's profits arising from the aforementioned wrongful conduct including the use and sale of the Marks and DM's damages arising therefrom;

F.  Awarding DM compensatory and treble damages for MCB's violation of the Lanham Act;

G. Awarding DM punitive damages, in an amount to be determined at trial, by reason of the willful and wanton nature of MCB's acts; due to its repeated disregard of trademark rights, and its persistent reliance on business methods based on unfair competition;

H. Awarding DM damages pursuant to Section 43(a) of the United States Trademark Act of 1946, 15 U.S.C. § 1125(a);

I. Awarding DM liquidated damages in accordance with the terms of the Agreement;

J. Awarding DM reasonable attorneys' fees and costs;

K. Enjoining and restraining MCB, its officers, agents, servants, employees, wholesalers, retailers, distributors, sellers, attorneys, successors and assigns, and all persons in privity, concert or participation with any of them, from:

    a) using the Marks upon or in connection with goods and services similar to the goods and/or services used, sold, registered and/or applied for the Marks; and/or any other word, symbol or device so similar to the Marks as to be likely to cause confusion, to cause mistake or to deceive;

    b) making any false or misleading representations or descriptions in connection with the advertising or promotion of goods and services similar to the goods and/or services used, sold, registered and/or applied in connection with the Marks, that tend to misrepresent the nature characteristics or qualities of the MCB's goods, services, or commercial activities;

    c) from doing any other act or thing calculated or likely to cause confusion or mistake among the trade or the public or to deceive purchasers into thinking

        that the MCB's goods and/or services are DM goods and/or services, or come from or are associated or affiliated with DM, David Tutera and/or the Marks, or are sponsored or approved by DM or David Tutera, or come from the same source as DM's goods and/or services;

   d)   from encouraging the passing-off of MBC's goods and/or services in place of DM's goods and/or services; and from otherwise engaging in unfair business acts and practices or competing unfairly with DM or causing harm to its business reputation;

   e)   from producing or authorizing or engaging anyone to produce goods and/or services confusingly similar to the goods and services provided by DM or David Tutera;

   f)   from producing or authorizing or engaging anyone to produce, and/or selling the dress styles that were featured in the "David Tutera for Mon Cheri" line as of the day of termination of the Agreement;

L.   Directing MCB to distribute corrective advertising to redress the false and misleading statements and representations it has made; or that DM be awarded an amount sufficient to prepare and disseminate the same;

M.   Directing MCB to deliver up to DM for destruction all products in their possession or control that bear the Marks or any simulation thereof; and to file with the Court and serve upon DM (within 30 days) a written report, under oath, setting forth in detail the manner and form in which it complied with such injunction; and

N.   Awarding DM such other and further relief as the Court may deem just.

DATED: New York, New York             Respectfully submitted,
January 5, 2018

                                                      SILLS CUMMIS & GROSS P.C.

                                                     */s/* Ilarai Maggioni
                                        By:    Ken Schachter
                                                  Ilaria Maggioni
                                                   101 Park Avenue, 28th Floor
                                                   New York, NY 10178
                                                   Tel. (212) 643-7000
                                                   Fax (212) 643-6500

                                                   ATTORNEYS FOR
                                                   PLAINTIFF DADA MEDIA, INC.

## SCHEDULE A

Plaintiff DM's Trademark Registrations
issued by the United States Patent and Trademark Office

| Trademark and Registration Number | Registration | Goods/Services (International Classes) (First Use In Commerce Dates) |
|---|---|---|
| **DAVID TUTERA** <br><br> Reg. No. 3,411,492 | April 15, 2008 | Books in the field of food, wine, entertaining, party planning and party decorating (International Class 16) (September 2001) <br><br> Entertainment in the nature of on-going television programs in the field of entertaining, party planning, party decorating, food, wine; providing information in the field of entertaining, party planning, party ideas, party decorating; consulting services in the field of entertaining, party planning, party ideas, party decorating (International Class 41) (December 31, 2005) <br><br> providing information in the field of recipes and wine (International Class 43) (January 1, 1998) |
| **DAVID TUTERA** <br><br> Reg. No. 4,115,888 | March 20, 2012 | Paper name tags; guest books; thank you cards; party ornaments made of paper, namely, cardboard cake boxes, cardboard party favor boxes, cardboard cupcake boxes, and decorative paper cupcake wraps (International Class 16) (February 6, 2011) <br><br> Pillows; party ornaments made of plastic, namely, plastic garland ornaments, plastic prism ornaments, |

| | | |
|---|---|---|
| | | and plastic pearl bead ornaments<br>(International Class 20)<br>(February 6, 2011) |
| **DAVID TUTERA**<br><br>Reg. No. 4,230,566 | Oct. 23, 2012 | Jewelry; fine, precious and costume jewelry in platinum, karat gold, silver, base metal or other alternative metals, with or without stones of any type or size, consisting of, without limitation, rings, bracelets, necklaces, pendants and earrings<br>(International Class 14)<br>(February 2011) |
| **DAVID TUTERA**<br><br>Reg. No. 4,116,274 | March 20, 2012 | Watches<br>(International Class 14)<br>(November 7, 2011) |
| **DAVID TUTERA**<br><br>Reg. No. 4,351,642 | June 11, 2013 | Shoes, namely, bridal shoes for women<br>(International Class 25)<br>(March 15, 2013) |
| **DAVID TUTERA**<br><br>Reg. No. 4,618,190 | October 07, 2014 | Downloadable software in the nature of a mobile application for use in connection with wedding planning<br>(International Class 9)<br>(March 21, 2013) |
| **DAVID TUTERA EMBELLISH**<br><br>Reg. No. 4,731,848 | May 05, 2015 | Jewelry; costume jewelry in base metal or other alternative metals, with or without stones of any type or size, consisting of, without limitation, rings, bracelets, necklaces, pendants and earrings<br>(International Class 14)<br>(2010) |

17

| **DAVID TUTERA** Reg. No. 4,645,146 | Nov. 25, 2014 | Bridal dresses (International Class 25) (November 01, 2011) |
|---|---|---|
| **DAVID TUTERA PATTERNS** Reg. No. 4,818,842 | September 22, 2015 | Printed patterns, namely, paper patterns with accompanying printed instructions and guides, for use in sewing adults' and children's garments and accessories (International Class 16) (November 01, 2014) |
| **DAVID TUTERA PHOTO AND VIDEO** Reg. No. 4,963,134 | May 24, 2016 | Photography services, video production services (International Class 41) (2015) |